# Stevens, Hinds & White, P.C.

HOPE R. STEVENS (1904-1982)
JAVIER A. WHITE (1945-1987)
LENNOX S. HINDS *

ATTORNEYS AT LAW
116 WEST 111TH STREET
NEW YORK, NY 10026

NEW JERSEY OFFICE
42 VAN DOREN AVENUE
SOMERSET, NJ 08873
(732) 873-3096

Of-Counsel:
JULIETTE CHINAUD
GNOLEBA R. SERI *
DIDIER SEPHO ◊

TEL: (212) 864-4445
FAX: (212) 222-2680
E-MAIL: lawfirmshw@yahoo.com

PARIS OFFICE
27, AVENUE DE L'OPERA
75001 PARIS

*Also in*
\* New Jersey
◊ Paris

November 9, 2010

<u>*VIA ELECTRONIC FILING AND FAX (1-973-297-4906)*</u>
Honorable Madeline Cox Arleo, United States Magistrate Judge
United States District Court
MARTIN LUTHER KING COURTHOUSE
50 Walnut Street – Room 2060
Newark, New Jersey 07101

      Re:    **Russell-Brown v. The University of Florida Board of Trustees et al., No. 10-cv-04017-SDW-MCA**

Dear Judge Arleo:

      I represent Plaintiff Sherrie Russell-Brown in the above-referenced matter. Respectfully, I write to renew my request for limited, focused jurisdictional discovery. In an order dated September 15, 2010 (Doc. 15), Your Honor denied, as premature, my initial request for jurisdictional discovery (Doc. 13), stating that, when and if a motion to dismiss for lack of personal jurisdiction is filed, the Court would consider a renewed request for jurisdictional discovery. On October 8 and 12, 2010, respectively, the defendants the University of Oxford ("Oxford") and Oxford University Development (North America), Inc. ("Oxford NA") (collectively, the "Oxford Defendants") filed Motions to Dismiss (Docs. 24 and 26) for lack of personal jurisdiction. The motion date for both Motions is December 6, 2010.

      However, before addressing the issue of jurisdictional discovery, to the extent that they may be relevant to the Court's determination on the issue of jurisdictional discovery, I would like to clear up some misstatements of law and fact in the Oxford Defendants' Motions to Dismiss. First, there is no pending related action in the Northern District of Florida. Consequently, the Oxford Defendants' request to dismiss, stay or transfer Ms. Russell-Brown's action to the Northern District of Florida, based on the "first-filed" rule, is moot. <u>See, e.g.</u>, <u>Sperry Associates Fed. Credit Union v. Cumis Ins. Soc., Inc.</u>, No.10-29-DRD-MAS (D.N.J. April 5, 2010) (order in which Judge Debevoise denied, as moot, the defendants' motion to dismiss or stay based on the "first-filed" rule, in light of the recent remand of the "first-filed" action from the District Court for the Western District of Wisconsin back to a Wisconsin state court). In support of their request, under the "first-filed" rule, that this Court dismiss, stay or transfer Ms. Russell-Brown's action, the Oxford Defendants contend that Ms. Russell-Brown's District of New Jersey action is "broadly" similar to an action "currently pending" in the Northern District of Florida (Doc. 24-1 at 6-8, 25-26 and Doc. 26-1 at 7-8). The Oxford Defendants are not parties to the Florida action. Assuming, *arguendo*, that the "first-filed" rule applies, as the Oxford Defendants themselves explain (Doc. 24-1 at 8), Ms. Russell-Brown

voluntarily dismissed her action in the Northern District of Florida and appealed the conditions imposed on dismissal – namely, her payment to the University of Florida of, approximately, $140,000 in attorney's fees and costs and allowing the University of Florida's state law breach of Release counterclaim to go forward against her. **Ms. Russell-Brown's appeal has been selected for mediation by the Eleventh Circuit, which mediation is scheduled for December 3, 2010 (Exhibit A).** In sum, there is no pending related action in the Northern District of Florida and, after December 3rd, there may be no pending appeal before the Eleventh Circuit.

Second, likewise, there is no pending related action before the Office of Independent Adjudicator ("OIA") – a student complaints scheme in England, with no regulatory powers over universities in England or powers to punish or fine them. Consequently, Oxford's assertion that if this Court dismisses Ms. Russell-Brown's action, on the ground of forum non conveniens, she may immediately thereafter resume her complaint before the OIA (Doc. 24-1 at 8-9, 21-22 and Doc. 24-15 at ¶ 21), is factually incorrect. As the record evidence provided by Oxford indicates (Doc. 24-15, Exhibit B), if the issues before this Court were the same as those in Ms. Russell-Brown's OIA complaint, the OIA, in fact, would not be able to consider and would close her complaint. Attached hereto as Exhibit B is an e-mail dated July 5, 2010 in which the OIA also makes plain to Ms. Russell-Brown that, if the matters she brought to the OIA for consideration are the same as those she pursues with the Courts, the OIA will not be able to subsequently review those matters and her file would be closed. In sum, as Oxford is aware, the gravamen of the present suit is not and cannot be the subject of the suspended OIA proceedings in England.

Third, and, most important, in its Motion papers, Oxford has failed "to satisfy the threshold issue in the *forum non conveniens* analysis demonstrating that [England] provides an adequate alternative forum for [Ms. Russell-Brown] to pursue [her] suit." See D'Elia v. Grand Caribbean Co., Ltd., No. 09-cv-1707 (NLH)(KMW), 2010 WL 1372027, at *7 (D.N.J. March 30, 2010); see also, Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n. 22, 102 S.Ct. 252 (1981) ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum"); Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1226 (3rd Cir. 1995) (same); Technology Development Co., Ltd. v. Onischenko, 536 F.Supp.2d 511, 517 (D.N.J. 2007) ("A determination of whether an adequate alternative forum exists is a threshold issue on a motion to dismiss for *forum non conveniens*").

To meet the "adequacy" requirement, Oxford had to show that England – the proposed alternative, foreign forum – would have jurisdiction over each of the defendants; otherwise the necessity of two suits, in New Jersey and England, would unduly burden both Ms. Russell-Brown and the courts. See Lacey v. Cessna Aircraft Co. ("Lacey II"), 932 F.2d 170, 177, 185 (3rd Cir. 1991) ("To be a suitable alternative forum, the foreign jurisdiction must have jurisdiction over all defendants"); Derensis v. Coopers & Lybrand Chartered Accountants, 930 F.Supp. 1003, 1007 (D.N.J. 1996) ("Defendants have satisfied the first requirement that all defendants are amenable to process in Canada").

Here, except for Oxford, the other seven defendants are all American citizens and the record evidence that Oxford has provided, in the form of a declaration by an English solicitor, Philip John Hope Vaughan (Doc. 24-15), does not mention whether the seven American defendants would be subject to personal jurisdiction in English courts. Indeed, Mr. Vaughan does not even "explicitly concede that [Oxford] is subject to the jurisdiction of [English] courts or that [Oxford] would waive any jurisdictional or other legal obstructions that may impede [Ms. Russell-Brown's] case [in England]." See D'Elia, 2010 WL 1372027, at *7 ("Interval Servicing sets forth nothing more than

conclusory statements assuring the Court that plaintiffs could pursue their action in Mexico against the other defendants"); see also, Lacey II, 932 F.2d at 180 n. 7 (wherein the defendants were willing to submit to jurisdiction in British Columbia).  Instead, as in D'Elia, Mr. Vaughan references a European Union ("EU") regulation which addresses which courts have jurisdiction in legal disputes between residents of the different EU Member States and, understandably, provides that persons domiciled in a Member State shall be sued in the courts of that Member State (Doc. 24-15 at ¶ 5).  Mr. Vaughan, then, somehow, deduces from this EU regulation that since Oxford is domiciled in England, it is "unarguably" subject to the jurisdiction of the "English judicial system" and "[i]f Ms. Russell-Brown commenced proceedings in England, Oxford would have no legitimate basis for challenging the jurisdiction of the English courts" (Doc. 24-15 at ¶ 6).  Further, Mr. Vaughan "proffers no authority . . . that [Ms. Russell-Brown's] suit would survive [England's] statute of limitations."  See D'Elia, 2010 WL 1372027, at *7; see also, Bhatnagar, 52 F.3d at 1225 (stating that "a district court cannot dismiss on forum non conveniens grounds if that decision would render a plaintiff unable to pursue his or her action elsewhere").  In sum, because Oxford "failed to satisfy this threshold inquiry, the Court need not delve any further into its forum non conveniens analysis."  See D'Elia, 2010 WL 1372027, at *7.

Finally, because Oxford has not met its burden of showing that England is an adequate alternative forum, even if this Court were to accord little or no deference to Ms. Russell-Brown's choice of forum, Oxford's Motion to Dismiss for forum non conveniens would still be denied.  See Technology Development Co., Ltd., 536 F.Supp.2d at 520-21.  Here, however, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum.  See Piper, 454 U.S. at 255.  And, although it is the relationship between the United States and the case which, generally, should be considered (see Windt v. Qwest Communications Intern., Inc., 529 F.3d 183, 191 (3rd Cir. 2008)), Oxford misstates Ms. Russell-Brown's connections with New Jersey, referring to New Jersey simply as Ms. Russell-Brown's "'current' place of residence" (Doc. 24-1 at 1).

Ms. Russell-Brown was born and raised in New Jersey, attended high school (Rutgers Preparatory School) in New Jersey, has only been a registered voter of the State of New Jersey, purchased the home in which she lives in New Jersey, over a decade ago, and has been a resident of New Jersey for almost her entire life.  Ms. Russell-Brown did not choose the forums of the United States or New Jersey in order "to vex, harass, or oppress" Oxford.  Where the plaintiff resides in the forum state, deference to the plaintiff's choice of forum is particularly required.  See Derensis, 930 F.Supp. at 1009; see also, Piper, 454 U.S. at 255-56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient"); Gear v. Constantinescu, 741 F.Supp. 525, 528 (D.N.J. 1990) ("[A]s a resident, [plaintiff] is entitled to litigate in her home forum").

Turning, now, to the issue of jurisdictional discovery, as to the bases for personal jurisdiction, Ms. Russell-Brown's claims certainly are not frivolous and she is faced with the difficult task of trying to establish personal jurisdiction over two corporate entities.  See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 336 (3rd Cir. 2009) ("We have explained that if 'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden' . . . Furthermore, we have found jurisdictional discovery particularly appropriate where the defendant is a corporation").

The factual allegations in Ms. Russell-Brown's First Amended Complaint (Doc. 20), give rise to, at least, five bases for personal jurisdiction over the Oxford Defendants, including: 1) the Oxford Defendants' tortious conduct in New Jersey (Doc. 20 ¶¶ 90-92, 104-105) (see Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146-47 (3rd Cir. 1992) ("New Jersey would permit the exercise of personal jurisdiction over a non-resident defendant who committed a single tortious act, whether negligent or intentional, within New Jersey")); 2) the Oxford Defendants' communications into New Jersey (Doc. 20 ¶¶ 68, 73-78, 85-86, 96-97, 99, 101-105) (see O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 318 (3rd Cir. 2007) (wherein the Court found that through mailing a seasonal newsletter, then a brochure and trading telephone calls, Barbadian defendant Sandy Lane Hotel deliberately reached into Pennsylvania to target its citizens); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 100 (3rd Cir. 2004) (Appellees' communications into New Jersey in order to set up their trip to China, sufficient to subject them to jurisdiction); Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3rd Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction"); Vist Financial Corp. v. Tartaglia, No. 08-CV-4116 (DMC)(JAD), 2010 WL 2776832, at *8 (D.N.J. July 14, 2010) (wherein Judge Cavanaugh held that "Hollander's conduct - i.e., communications to his client's New Jersey counsel, concerning a New Jersey-based trust fund, which consisted of funds generated by a property located in New Jersey - is sufficient to justify the assertion of personal jurisdiction in New Jersey")); 3) the Oxford Defendants' intentional, retaliatory dissemination of false and defamatory information "expected or intended to cause injury in New Jersey" (Doc. 20 ¶¶ 68, 106-118) (see Blakey v. Continental Airlines, Inc., 164 N.J. 38, 67-68 (N.J. 2000) (wherein the New Jersey Supreme Court held that the intentional dissemination of false information, published on the internet, satisfies the minimum contacts requirement of *International Shoe*, stating that "[i]f this case had arisen just a few years ago and the offending communications had been placed in The New York Times or U.S.A. Today, with the expectation or intent that the publications would affect the pursuit of [plaintiff's discrimination] claims in New Jersey, we would have little difficulty in exercising jurisdiction over the defamatory statements. The messages would have been published in New Jersey, albeit in print versus electronic form. A claimant who was in the process of vindicating her rights in a forum in New Jersey would surely feel the effect here. It would be a paradox if electronic communications, with their instantaneous messaging, would lessen the jurisdictional power of a state"); Calder v. Jones, 465 U.S. 783, 791, 104 S.Ct. 1482, 1488 (1984) (holding that California could properly impose personal jurisdiction over non-resident tabloid writers because "their intentional conduct in Florida [was] calculated to cause injury to respondent in California")); 4) the Oxford Defendants' parent-subsidiary relationship (Doc. 20 ¶ 12)[1] (see New Jersey Regional Council of Carpenters v. Horton, No. 08-1731 (KSH), 2010 WL 2674474, at **2, 7 (D.N.J. June 30, 2010) ("The single-entity test allows a court to impute the forum contacts of the subsidiary to the parent when the two entities "are, in reality, operating as a corporate combine")), and; 5) the Oxford Defendants' participation in a conspiracy that is located in, or has an effect upon, New Jersey (Doc. 20 ¶¶ 69-105) (see Vist Financial Corp., 2010 WL 2776832, at *9 (wherein Judge Cavanaugh notes that personal jurisdiction can in some cases be based upon participation in a conspiracy that is located in, or has an effect upon, the forum state and that the facts alleged by Vist would likely satisfy the test)).

---

[1] Counsel for the Oxford Defendants may have missed that Oxford and Oxford NA are referred, collectively, as the "Oxford Defendants." Therefore, the relevant facts concerning Oxford NA's involvement and contact with New Jersey can be found in the following 33 paragraphs of the First Amended Complaint (Doc. 20): 68, 71-72, 74, 77-81, 85-87, 89-92, 96-99, 101-109, 112, 114-115 and 118.

4

In their Motion papers, the Oxford Defendants' response to the jurisdictional issue proves too much. For example, Oxford erroneously contends that "letters, emails and phone calls to a plaintiff in the forum state are not sufficient to show purposeful availment." (Doc. 24-1 at 13). Yet, if physical presence within the forum state is not required to establish personal jurisdiction over a non-resident defendant (see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)), what remains? Similarly, Oxford erroneously argues that the relevant contacts of Oxford professors, with New Jersey, should not be considered in the jurisdictional analysis unless Ms. Russell-Brown can show that they were employed by Oxford to engage in discriminatory conspiracies in another country. (Doc. 24-1 at 14-15). Ms. Russell-Brown is not required to go so far as to allege that Oxford was established as an explicitly tortious or criminal enterprise, or that the individual Oxford professors' job descriptions included tortious or criminal functions - rare is the job description which includes committing intentional torts. Yet, an employer may be held liable for the intentional torts committed by its employees when the act is "within the scope of their employment." See Jovanovic v. Northrop Grumman Corp., No. 05-cv-4487, 2010 WL 1644690, at *2 (D.N.J. Apr. 22, 2010). The test is whether the conduct, i.e. attending meetings with other academics, communicating with other academics, communicating regarding a student, assessing a student examination, etc., is the kind that Oxford professors were employed to perform. See, e.g., Ismael v. Ali, 276 Fed.Appx. 156, 158-59 (3rd Cir. 2008) (Under Pennsylvania law, state university professors were acting within scope of their employment when they authored letter accusing organizer of academic conference of improperly handling funds collected for conference, and thus professors were entitled to sovereign immunity from damages in organizer's action alleging defamation, civil conspiracy, intentional infliction of emotional distress, and false light, even if professors were taking revenge of personal insult and even though their dean did not authorize letter, where professors' involvement in conference was kind of conduct that university employed them to perform, and faculty often wrote letters without need to seek dean's authorization).

Finally, Oxford erroneously contends that, it is "nothing short of nonsensical" to argue that, by "preventing" Ms. Russell-Brown from taking her examination, which was scheduled to take place in New Jersey, Oxford "purposely availe[d] itself of the privilege of conducting activities" within New Jersey (Doc. 24-1 at 15). Yet, there are, in fact, many examples of cases, under both the traditional specific jurisdiction analysis and the "effects test," which have found "purposeful contacts" or that a defendant "expressly aimed" their tortious conduct at New Jersey, based upon a failure to act or an omission. See, e.g., Gambone v. Lite Rock Drywall, 288 Fed.Appx. 9, 14 (3rd Cir. 2008) (Defendant **prevented** the plaintiffs from collecting on a judgment rendered in their favor by a court in Pennsylvania); Carteret Sav. Bank, FA, 954 F.2d at 146-47 (In New Jersey, defendant **deliberately failed** to explicate matters which materially affected plaintiff's interests); Flagship Interval Owner's Ass'n, Inc. v. Philadelphia Furniture Mfg. Co., No. 09-1173 (JBS/JS), 2010 WL 1135736, at *8 (D.N.J. March 22, 2010) (Defendant expressly aimed their allegedly tortious conduct at New Jersey, by sending their solicitation for the deposit to New Jersey and **refusing** to return the money to New Jersey); Cornish v. Morris Communications Co., LLC, No. 08-6395 (MLC), 2009 WL 2169046, at *7 (D.N.J. July 16, 2009) (Defendant's inducements to defer other consulting engagements **directly prevented** the plaintiff from seeking business opportunities in New Jersey); Bachmann Software & Services v. Intouch Group, Inc., No. 08-2025(KSH), 2008 WL 2875680, at **9-11 (D.N.J. July 22, 2008) (**Failing** to make payment in New Jersey as promised to the plaintiff); Lawn Doctor, Inc. v. Branon, No. 07-cv-04735 (FLW), 2008 WL 2064477 at *6, (D.N.J. May 14, 2008) ("Plaintiff also alleges that during this time period Defendants intentionally misrepresented the D'Eramo Franchises' ability to pay Lawn Doctor monies owed, while simultaneously **diverting funds** away from the franchises").

5

Accordingly, respectfully, jurisdictional discovery is needed regarding: 1) the Oxford Defendants' contacts with or communications into New Jersey and their contacts or communications with co-conspirator Gainesville Defendants – Oxford submitted declarations (Docs. 24-11, 24-12 and 24-13) from only three of the nine Oxford professors specifically referred to in the First Amended Complaint (see Doc. 20 ¶¶ 45, 74, 77 n. 1, 85 n. 2, 96 n. 3); 2) the Oxford Defendants' contacts or communications with the Media Defendants – Oxford contends that, despite thirteen detailed paragraphs (see Doc. 20 ¶¶ 106-118), Ms. Russell-Brown does not allege "any specifics regarding who at Oxford is purported to have contacted [the Media Defendants] or what was said to whom and when" (Doc. 24-1 at 5), and; 3) the nature of the relationship between the Oxford Defendants. Finally, for a claim arising under federal law, as is the case here, Fed. R. Civ. P. 4(k)(2) allows a federal court to exert jurisdiction over a foreign defendant where the defendant lacks sufficient contacts in a single state to bring it within the reach of the state's long arm statute, yet has enough contacts with the United States, as a whole, to make jurisdiction constitutional. This is similar to, but should not be confused with, the test used when a specific statute or rule affords nationwide or worldwide service of process. Fed. R. Civ. P. 4(k)(2) requires the additional step of proving that the international defendant has *insufficient* minimum contacts with any of the fifty states to support jurisdiction under the Fourteenth Amendment. Consequently, in the alternative, discovery is needed regarding Oxford's aggregate contacts with the United States.

In conclusion, the Chair of Oxford's Law Board, Timothy Endicott, concedes (see Doc. 24-11 ¶ 32) that, beginning in June 2005, the Gainesville Defendants contacted him about Ms. Russell-Brown only three days after she disclosed what she believed to be discriminatory conduct by the Gainesville Defendants (Doc. 20 ¶ 43). As evidenced by Exhibit C to Ms. Russell-Brown's First Amended Complaint (Doc. 20 ¶ 91) – an e-mail between the Oxford and Gainesville Defendants, dated December 2, 2008, in which the Gainesville Defendants refer to Ms. Russell-Brown's upcoming January 2009 examination in New Jersey and instruct Oxford to fail Ms. Russell-Brown, stating that "an indication of general incompetence as a scholar would detract from [Ms. Russell-Brown's] allegations of discrimination" against them – the unlawful communications between the Oxford and Gainesville Defendants continued and continue. The Oxford professor, who agreed to fail Ms. Russell-Brown, at the Gainesville Defendants' request, was a visiting professor in New Haven, Connecticut, at the time of his communications with the Gainesville Defendants. Although Ms. Russell-Brown was in England in June 2005, she has not returned to England, since January 2007, and she has not travelled to Florida, since May 2007. Consequently, there have been hundreds of e-mails, phone calls, letters, by Oxford into New Jersey, through which Oxford provided educational materials, instruction, and/or assignments to Ms. Russell-Brown. There are several non-frivolous bases for personal jurisdiction over the Oxford Defendants. Limited, focused jurisdictional discovery will assist Ms. Russell-Brown in meeting her burden.

Thank you for your consideration.

Respectfully yours,

Lennox S. Hinds

LSH/sbt

Attachments

cc:   Zoe Eva Jasper, Esq., Attorney for Defendants the University of Oxford and Oxford University Development (North America), Inc. (via CM/ECF)

Bruce Rosen, Esq., Attorney for Defendants ALM Media, LLC, William L. Pollak and Karen Sloan (via CM/ECF)

# EXHIBIT A

KINNARD MEDIATION CENTER
# UNITED STATES COURT OF APPEALS
ELEVENTH JUDICIAL CIRCUIT

PLEASE REPLY TO THE **ATLANTA OFFICE**
WRITER'S DIRECT DIAL **404-335-6272**
WRITER'S EMAIL **William_Roland@ca11.uscourts.gov**

DONALD F. HAWBAKER
CHIEF CIRCUIT MEDIATOR

CALEB DAVIES
JOE N. UNGER
R. WILLIAM ROLAND
BETH GREENFIELD-MANDLER
CIRCUIT MEDIATORS

October 25, 2010

Lennox S. Hinds, Esq.
116 West 111th Street
New York, NY 10026

Ian S. Marx, Esq.
200 Park Avenue
New York, NY 10166-0005

Richard C. McCrea Jr., Esq.
625 East Twiggs Street
Tampa, FL 33602

APPEAL 10-14328, SHERRIE RUSSELL-BROWN v. UNIVERSITY OF FLORIDA, ET AL.

Notice of Telephone Mediation

Pursuant to Fed. R. App. P. 33 and 11th Cir. R. 33-1, **this appeal is scheduled for mediation to be held by telephone on Friday, December 3, 2010, at 10 a.m. Eastern Time.** I will initiate the call. You should allow **three hours** for this telephone mediation. The purpose of the mediation is to explore possibilities for settlement of the parties' dispute in its entirety, including any related claims that may not yet be ripe for Eleventh Circuit review. I require that you immediately provide a copy of this 3-page notice to your client, to any parties below who are required to participate, and to counsel for any other parties actively involved who are not listed as addressees on this notice. Please immediately identify these nonlisted parties to me and to opposing counsel.

Participants. Except as waived by me in advance of the mediation date, each of the following must participate in the entire mediation, including any follow-up sessions, until either a settlement is reached or I declare an impasse.

(a) You, your client, and a representative of any person or entity directly affected financially by the outcome of this litigation (indemnitors, etc.) must personally participate.

(b) Insurers: A representative of any insurance company, either as a party or nonparty, that has not offered policy limits must personally participate with authority and discretion to settle up to policy limits or the amount of the claimant's last settlement demand, whichever is less. If an insured party has any exposure outside of policy limits or has control or influence on the amount paid within policy limits, then both the insured party and the representative must personally participate.

(c) Governmental entities: When a party is a governmental entity that approves settlements by a deliberative session, then a member of that deliberating body or the entity's executive director or a person expressly designated by the director must personally participate.

**TAMPA OFFICE**
KINNARD MEDIATION CENTER
801 NORTH FLORIDA AVENUE, #1030
TAMPA, FL 33602
TEL 813-301-5530
FAX 813-301-5539

**ATLANTA OFFICE**
KINNARD MEDIATION CENTER
56 FORSYTH STREET, NW, #535
ATLANTA, GA 30303
TEL 404-335-6260
FAX 404-335-6270

**MIAMI OFFICE**
KINNARD MEDIATION CENTER
51 SOUTHWEST FIRST AVENUE, #1304
MIAMI, FL 33130
TEL 305-714-1900
FAX 305-714-1910

Notice of Telephone Mediation
Page 2
October 25, 2010

Authority. Representatives of parties must have authority to dismiss any affirmative claim unconditionally, or to pay a claim (or most recent settlement demand) in full, if in the client-representative's sole discretion resolution on that basis is appropriate. Representatives for governmental entities that make decisions collectively must have authority to negotiate on behalf of and make recommendations to such entity concerning settlement. All parties and counsel are required to participate in the mediation in good faith and with the intention of attempting to settle on a basis all parties can accept.

Confidential Mediation Statement. 11th Cir. R.33-1(d) requires that counsel send me a Confidential Mediation Statement assessing the prospects of the appeal. In the statement counsel should address the topics raised on page 3 of this notice. Counsel should fax, mail, or email the statement so that I receive it at least a week before the mediation date. It should be in letter format and preferably not more than five pages. I will not share the statement with the other side, and it will not become part of the court file.

Mediation Guidelines. Information participants need to prepare for this mediation, including information on the court's mediation process, the availability/presence/participation requirement, extensions of time to file briefs, post-settlement dismissal procedures, confidentiality, noncompliance sanctions for failing to comply with the rule or this notice of mediation, and preparing for effective mediation, is in the document "Mediation in the Eleventh Circuit Court of Appeals" (Rev. 9/09). All participants are required to read this document. 11th Cir. R. 33-1(g) permits the substitution of a private mediator, employed by the parties at their expense, to mediate this appeal under the procedures set forth by the Kinnard Mediation Center is in the document "Private Mediator Procedures for Mediation of Appeals." Both documents are available on the Internet at **www.ca11.uscourts.gov** or by calling this office to request either by fax or mail.

Briefs. **MEDIATION DOES NOT AUTOMATICALLY STAY APPELLATE PROCEEDINGS**, including the briefing schedule. If you have a brief due and would like to request an extension of time from me, you must follow the "Extensions of Time to File Briefs" procedures in Part 9 of the above mediation guidelines, which procedures are also available as a separate document at **www.ca11.uscourts.gov**

R. WILLIAM ROLAND, CIRCUIT MEDIATOR

Notice of Telephone Mediation
Page 3
October 25, 2010

## Confidential Mediation Statement

11th Cir. R. 33-1(d) requires that counsel in appeals selected for mediation send the circuit mediator a Confidential Mediation Statement assessing the prospects of the appeal. Counsel should fax, mail, or email the statement so that I receive it at least a week before the mediation date. It should be in letter format and preferably not more than five pages. I will not share the statement with the other side, and it will not become part of the court file. In the statement counsel should:

1. Recite the circumstances that gave rise to the litigation, including facts underlying any procedural issues in the appeal.

2. Describe any matters pending in the lower court or in any related litigation.

3. Describe any recent developments that may affect the resolution of the appeal.

4. Describe the important factors (factual, legal, practical) you believe affect the terms and conditions upon which the appeal may reasonably be settled.

5. Describe any efforts to settle the issues, including offers or demands before and since the judgment or order appealed from.

6. Provide a candid assessment of the strengths and weaknesses of the major points of error of the appeal.

7. Describe the necessary terms in any settlement (i.e., confidentiality, date by which settlement must close, scope of release, disposition of related litigation, etc.).

8. Describe any additional information your client or the other party needs to settle the appeal and whether it is needed before the mediation.

9. State whether you and your parties will participate in the mediation in good faith with the intention of using your best efforts to settle the appeal, and explain if "no" as to any party.

10. State whether you and your parties will maintain confidentiality with respect to settlement communications made and received during and subsequent to the mediation, and explain if "no" as to any party.

11. If the appeal were remanded, describe the realistic range of outcomes upon further trial or disposition by the lower court, including monetary remedies, attorney's fees, court costs, further appellate costs, and similar awards the lower court might have opportunity to consider awarding.

12. Provide the name, title, address, telephone number, and email address of each person who will be participating in the mediation with you and designate which persons will have settlement or negotiating authority. (As required in the Notice of Mediation, also provide this participant information to opposing counsel in a communication separate from this Confidential Mediation Statement, with a copy to me.)

*Do not send your Confidential Mediation Statement to opposing counsel or any party or the Circuit Clerk's Office.*

# EXHIBIT B



Sherrie Russell-Brown

# RE: OIA/08682/10

**Siobhan Hohls** <
To: Sherrie Russell-Brown <

Mon, Jul 5, 2010 at 3:44 AM

Dear Ms Russell-Brown

I acknowledge receipt of your emails dated 2 July 2010 and 3 July 2010. I understand from these emails that you have now decided to take legal action against the University. As you will know the Scheme does not cover a complaint to the extent that: *"the matter complained about is the subject of court or tribunal proceedings and those proceedings have been concluded, or the matter is the subject of court or tribunal proceedings and those proceedings have not been stayed."*

As a result of this if the matters you have brought to the OIA for consideration are the matters which you intend pursuing with the Courts the OIA will not be able to review these complaints even after the Court has made a finding. If this is the case your file will be closed.

If you are taking other matters through the Court which are not related to the complaints you have raised with the OIA then I suggest that your file be suspended until the Court proceedings are concluded or stayed.

Please could you indicate whether the matters to be pursued with the Court are in fact related to the complaints raised with the OIA. This will assist us in making a decision as to whether we should suspend or close your file. Please provide your response on or before **7 July 2010**.

Regards

Siobhan Hohls

Adjudication Manager